UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL ISSOKSON,<br><br>    Plaintiff,<br><br>v.<br><br>ONEWEST BANK, FSB,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 12-11743-LTS<br>)<br>)<br>)<br>)<br>) |

ORDER ON MOTION TO REMAND AND MOTION TO DISMISS

January 8, 2013

SOROKIN, C.M.J.

Before the Court are the plaintiff's Motion to Remand and for Attorney's Fees and Costs, Doc. No. 12, the defendant's Motion to Dismiss, Doc. No. 18, and related briefs in support of and opposition to both motions. For the reasons that follow, the Court concludes it lacks jurisdiction because the defendant has not established a reasonable probability that the amount in controversy exceeds $75,000. Accordingly, the plaintiff's motion is ALLOWED, the case is REMANDED to state court, and the defendant's motion is DISMISSED.

I.   BACKGROUND[1]

In November 1983, the plaintiff, Daniel Issokson, became the registered owner of property located at 11 Tom Nevers Road in Nantucket, Massachusetts. Doc. No. 1-1 at 3, 6. The property has been assessed as having a value of $716,700. Doc. No. 17-2. Issokson took out a

---

[1] These facts are drawn from the plaintiff's Land Court petition, Doc. No. 1-1, the notice of removal, Doc. No. 1, the state court record, Doc. No. 6, and the parties' submissions regarding remand, Doc. Nos. 12, 12-1, 12-2, 17, 17-1, 17-2, 17-3, 17-4.

$680,000 mortgage loan from Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for IndyMac Bank, in November 2007.  Doc. No. 1-1 at 3, 9; see generally Doc. No. 12-1.  On December 10, 2009, a document purporting to assign Issokson's mortgage from MERS to defendant OneWest Bank ("OneWest") was registered with the Massachusetts Land Court.  Doc. No. 1-1 at 4; see generally Doc. No. 12-2.

OneWest foreclosed on the mortgage and sold the property at public auction to OWB REO, LLC ("OWB") on April 5, 2012.  Doc. No. 6 at 60.  The same day, Issokson filed a Petition to Amend Certificate of Title ("S-Petition") in the Land Court.  See id. at 10-12 (petition and notarization signed and dated April 4, 2012, but stamped "filed" by the Land Court April 5, 2012); see also id. at 13-14 (Land Court civil cover sheet dated April 4, 2012).  The S-Petition, which did not contain a caption naming OneWest or any other defendant, was filed pursuant to Massachusetts General Laws chapter 185, § 114, and alleged the assignment from MERS to OneWest was "fraudulent, invalid, and legally inoperative."  Doc. No. 1-1 at 3-4.  The petition sought merely to expunge the assignment from the title.  Id. at 4-5.

A foreclosure deed to OWB was executed on April 18, 2012 and registered with the Land Court on May 22, 2012.  Id. at 59.  OWB has initiated eviction proceedings in the Nantucket District Court, and Issokson has requested that those proceedings be stayed pending adjudication of the S-Petition.  See Doc. No. 17-4.  On September 19, 2012, OneWest removed the Land Court action to this Court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Doc. No. 1.  At the time of removal, neither OneWest nor any other party had been served or had appeared

in the Land Court action.[2]  Doc. No. 12 at 3; see also Doc. No. 6 at 1.

Issokson has moved to remand the case to the Land Court, arguing: (1) the Land Court has prior, exclusive jurisdiction over such an action; (2) the case was removed prematurely; and (3) this Court lacks jurisdiction because the amount in controversy does not exceed $75,000. Doc. No. 12 at 5-12.  OneWest opposes remand, Doc. No. 17, and also has moved to dismiss for failure to state a claim, Doc. No. 18.

II.  LEGAL STANDARD

"[T]he removal statute should be strictly construed, and any doubts about the propriety of removal should be resolved against the removal of an action." Montana v. Abbot Labs., 266 F. Supp. 2d 250, 254 (D. Mass. 2003); see also Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 50 (1st Cir. 2009) (acknowledging "general rule of deference to the plaintiff's chosen form"). A removing defendant, as the party seeking to invoke federal jurisdiction, bears the burden of proving by a "reasonable probability" that the amount in controversy exceeds the jurisdictional minimum. Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 285-86 (D. Mass. 2011); accord Amoche, 556 F.3d at 48-49.  "The [reasonable probability] standard is particularly applicable where, as here, a plaintiff's complaint does not contain specific damage allegations." Reynolds, 272 F.R.D. at 286.

Several principles guide courts in the First Circuit when they apply the "reasonable probability" standard.  For example, "if the jurisdictional amount is not facially apparent from the complaint," courts consider the defendant's materials offered in support of removal, as well as

---

[2]It apparently is the practice in such actions for the Land Court to perform a title search and identify all parties with a potential interest in the proceedings who should receive notice of the S-Petition. See Doc. No. 20 at 6 n.2; see also Mass. Gen. Laws ch. 185, § 38.

any submissions by the plaintiff requesting remand.  Id.; see Amoche, 556 F.3d at 51.  This inquiry focuses on the amount that is in controversy "at the time of removal."  Amoche, 556 F.3d at 51.  Another guiding principle requires that "any doubts in the evidence should be construed in favor of remand because the court has a 'responsibility to police the border of federal jurisdiction.'"  Reynolds, 272 F.R.D. at 286 (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001)).  Finally, "determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry."  Spielman, 251 F.3d at 4; accord Amoche, 556 F.3d at 50; Reynolds, 272 F.R.D. at 286.

"Where the plaintiff seeks equitable relief, the amount-in-controversy is 'measured by the value of the object of the litigation.'"  Aliberti v. GMAC Mortg., LLC, 779 F. Supp. 2d 242, 245 (D. Mass. 2011) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)).  Such value is determined based on "the judgment's pecuniary consequences to those involved in the litigation."  Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004); see Aliberti, 779 F. Supp. 2d at 245-46.  Where a plaintiff limits his claims or his demand, the amount in controversy is assessed in light of the plaintiff's expressed limitations, despite the fact that "more would have been recoverable had it been demanded."  Lorensen v. Jenney Mfg. Co., 158 F. Supp. 928, 929 (D. Mass. 1958); see Hersey v. WPB Partners, LLC, 2011 WL 587959, at *1-2 (D.N.H. Feb. 8, 2011).

III.    DISCUSSION

Considering the foregoing standards, OneWest has failed to show a reasonable probability

that the amount in controversy in this case exceeds $75,000.[3]

OneWest's invocation of 28 U.S.C. § 1332 rests entirely on its characterization of Issokson's S-Petition as "an apparent effort to challenge the validity of the foreclosure sale" of the property.  Doc. No. 17 at 2.  According to OneWest, the S-Petition "is effectively a request for a declaratory judgment voiding the foreclosure sale."  Id.  Based on this view of Issokson's claim, OneWest asserts the amount in controversy is either the amount of Issokson's mortgage ($680,000), the price paid by OWB following the foreclosure sale ($587,180.67), or the fair market value of the property ($716,700), any of which would satisfy the jurisdictional minimum.  Id. at 4-5.  As support, OneWest cites cases holding that such values are "acceptable measure[s]" of the amount in controversy where plaintiffs seek "equitable relief against a foreclosure sale."  Id. at 5.

This argument, however, goes too far in recasting Issokson's S-Petition.  Although it is possible – if not probable – that Issokson ultimately hopes to undermine the foreclosure sale and restore his ownership of the property, the S-Petition alone will not accomplish such a goal.  It does not seek to enjoin or void the sale.  In fact, the S-Petition, which was signed and dated before the foreclosure sale took place, contains no allegations whatsoever regarding the status of

---

[3]Initially, Issokson argues "OneWest's [removal] is, at best, premature," noting the Land Court has not yet identified all possible parties in interest and issued citations for service.  Doc. No. 12 at 8; see also id. at 3 (asserting MERS, IndyMac Bank, and OWB potentially will be parties to this action as well).  He further suggests that, if the case proceeds in federal court, this Court will be obligated to follow the procedures applicable under Massachusetts law, such as engaging a title examiner to identify parties entitled to notice of the action.  Doc. No. 20 at 6 n.2.  Although the Court bases its remand decision on OneWest's failure to adequately establish the amount in controversy, Issokson's observations about the procedural complications raised by OneWest's attempt to remove the case underscore the fact that the Land Court is the appropriate forum for this action.

Issokson's mortgage payments or the looming foreclosure. See generally Doc. No. 1-1. Moreover, Issokson has explicitly denied that this action is aimed at attacking the foreclosure process. See Doc. No. 20 at 6 n.1. According to Issokson, his S-Petition merely requests a correction to "the certificate of title to his property under Massachusetts' statutory registered land regime." Id. Whether the S-Petition is an appropriate mechanism for removing an allegedly invalid assignment from Issokson's certificate of title, and whether such a correction is available to Issokson now that the Land Court has transferred title to OWB, see Doc. No. 6 at 17, are issues of Massachusetts law for the Land Court to resolve.

Furthermore, the cases OneWest cites as support for using the property value or the mortgage principle as the amount in controversy are distinguishable, as each of them involved direct and explicit attacks on the original mortgage and/or the foreclosure process. See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 210 (1st Cir. 2012) (plaintiff sought "an injunction to prevent . . . the foreclosure sale"); Morse v. Residential Credit Solutions, Inc., 2012 WL 458492, at *1 (D. Mass. Feb. 13, 2012) (plaintiff sought "a judgment declaring the original mortgage unenforceable"); Bedard v. Mortg. Elec. Registration Sys., Inc., 2011 WL 1792738, at *1 (D.N.H. May 11, 2011) (plaintiff sought permanent injunction against foreclosure); see also id. at *3 (listing cases where plaintiffs sought to enjoin or rescind foreclosure sales, or to compel compliance with an offered loan modification).

In a case that is more instructive here, a New Hampshire federal court remanded an action to state court where a plaintiff disavowed any direct attacks on her mortgage or an impending foreclosure. Hersey, 2011 WL 587959, at *1. Instead, the plaintiff limited her claim to an "equity request" that, before the foreclosure, her lender "provide an accounting" showing the

6

disposition of certain funds and the accuracy of certain records. Id. There, the "object of the litigation" was the request for an accounting (not ownership of the property or prevention of the foreclosure), and the action's "pecuniary consequences [were] indirect and ill-defined." Id. at *2.

The same is true here. OneWest suggests "the pecuniary consequences of the judgment sought by [Issokson] . . . would be to deprive OneWest of its collateral, worth far more than $75,000." Doc. No. 17 at 4. But according to OneWest, by the time of removal the property already had been sold to OWB. See id. at 3 (foreclosure sale April 5, 2012); Doc. No. 6 at 17 (title transferred to OWB May 22, 2012). The impact of this action on OneWest, therefore, is far from clear.[4] See Amoche, 556 F.3d at 51 (impact assessed based on circumstances present at the time of removal). From Issokson's perspective, the relief he seeks (removal of an assignment from his registered certificate of title) has pecuniary consequences that are similarly difficult to ascertain based on the record before this Court. Indeed, it is possible the action would have no pecuniary impact on Issokson, as he argues his mortgage obligations (which he does not attack here) would remain intact regardless of whether MERS, IndyMac, or OneWest were deemed the proper holder of the mortgage.[5] See Doc. No. 12 at 10; see also Aliberti, 779 F. Supp. 2d at 245-46 (amount in controversy was not value of home, but reduction in loan principle that would result if plaintiff obtained order compelling permanent loan modification). Under these

---

[4]To the extent it is appropriate to consider the pecuniary consequences to entities that are not parties to this action – or, at least, are not *yet* parties – any impact on OWB is likewise uncertain. If Issokson prevails on the claim in his S-Petition, it will be for the Land Court to determine what effect its decision has, under Massachusetts law, on the registered transfer certificate of title conveying the property to OWB, as well as what sort of relief, if any, is available to Issokson.

[5]There is nothing in the record showing when Issokson became delinquent in his mortgage payments, how much was owed, or how much equity Issokson had in the property.

circumstances, OneWest has not demonstrated a "reasonable probability" that the amount in controversy exceeds the minimum for diversity jurisdiction, and remand is appropriate.[6] Cf. Amoche, 556 F.3d at 50 (instructing that "[c]onsideration of [amount in controversy] should not devolve into a mini-trial").

Issokson has requested an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c). See Doc. No. 12 at 12-13. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Here, Issokson has asserted a claim peculiar to Massachusetts law in a unique state forum. In the absence of any federal court decision addressing removal of such a claim,[7] OneWest identified the possible impact a ruling in Issokson's favor might have on the foreclosure sale of the property involved, and creatively attempted to invoke federal diversity jurisdiction on that basis. Although ultimately unsuccessful, OneWest's endeavor was not unreasonable. An award of fees and costs is, therefore, inappropriate. Id.

Finally, concurrent with its opposition to Issokson's remand motion, OneWest filed a motion seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Doc. No. 18. In light of the foregoing determination that remand is necessary because this Court lacks jurisdiction, the Court

---

[6]In light of this conclusion, the Court need not evaluate Issokson's argument that the Land Court has prior exclusive jurisdiction over claims such as his. See Doc. No. 12 at 5-8.

[7]The Court is aware of only two federal court decisions citing the state provision under which Issokson filed his Land Court petition, and neither decision interprets the statute, let alone analyzes the removal of a claim brought thereunder. See Cavarette v. Greyhound Real Estate Fin. Co., 1995 WL 791943, at *5 (D. Mass. Dec. 21, 1995); In re Bailey, 468 B.R. 464, 470 (Bankr. D. Mass. 2012).

need not – indeed, it cannot – reach the merits of OneWest's motion. Accordingly, the motion will be dismissed.

IV.     <u>CONCLUSION</u>

For the reasons set forth above, Issokson's motion to remand (docket #12) is ALLOWED, Issokson's request for fees and costs is DENIED, and OneWest's motion to dismiss is DISMISSED. Pursuant to 28 U.S.C. § 1447(c), the Clerk of this Court shall mail a certified copy of this Order to the clerk of the Massachusetts Land Court.

                                        SO ORDERED.

                                  /s/ Leo T. Sorokin
                                  Leo T. Sorokin
                                  Chief United States Magistrate Judge